IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| LEIGH HOLLAND                              § | |
| § | |
| Plaintiff,                                  § | |
| § | |
| v.                                          § | Civil Action No. 4:24-CV-00289-O |
| § | |
| TEXAS CHRISTIAN UNIVERSITY                  § | |
| § | |
| Defendant.                                  § | |

**MEMORANDUM OPINION & ORDER**

Before the Court are Plaintiff's Motion for Summary Judgment, Brief, and Appendix in Support (ECF Nos. 26–28), filed December 19, 2024; Defendant's Response (ECF No. 47), filed January 23, 2025; and Plaintiff's Reply (ECF No. 50), filed February 6, 2025. Also before the Court are Defendant's Motion for Summary Judgment, Brief, and Appendix in Support (ECF Nos. 44–46), filed January 20, 2025; Plaintiff's Response (ECF No. 52), filed February 11, 2025; and Defendant's Reply (ECF No. 56), filed February 25, 2025. Upon reviewing the briefing and applicable law, the Court hereby **GRANTS** Defendant's Motion for Summary Judgment. Accordingly, Plaintiff's claims are **DISMISSED with prejudice**.

I.  BACKGROUND

This Family and Medical Leave Act ("FMLA") action arose out of Plaintiff Leigh Holland's termination in 2023. Plaintiff began her career with Defendant Texas Christian University in 2002.[1] During the relevant time period, Plaintiff worked as an Investigator in Defendant's Office of Institutional Equity ("OIE").[2] OIE "was created in September 2020 to help

---

[1] Pl.'s Compl. ¶ 4.01, ECF No. 1.
[2] *Id.* ¶ 4.06.

1

achieve [Defendant's] goal of ensuring all individuals have the opportunity to meaningfully engage in a learning and working environment free from all forms of harassment and discrimination."[3]  Plaintiff's responsibilities included investigating "allegations of harassment, discrimination, sexual misconduct and retaliation from inception to findings."[4]  Plaintiff worked under Sharon Gooding, who was the Director of the OIE since its creation.

According to Plaintiff, she spoke to Gooding on February 16, 2023, about her mental state.[5]  Plaintiff told Gooding she soon planned on seeing her therapist, Dr. Chism.[6]  The next day, Plaintiff virtually met with Dr. Chism and "broke down in her session."[7]  Dr. Chism advised Plaintiff to take the rest of the day off from work and provided her with a doctor's note for her supervisor.[8]  Heeding Dr. Chism's advice, Plaintiff slid the note under Gooding's door and left work early that day.[9]  Dr. Chism's note stated the following: "Please excuse Leigh Holland during the time from 2/17/23 until further notice.  She is currently in my care undergoing mental health evaluation."[10]  According to Defendant, Gooding was supportive of Plaintiff taking time off from work.[11]  In fact, Gooding requested that one of Defendant's leave administrators connect with Plaintiff and offer assistance.[12]  On February 21, 2023, Plaintiff requested FMLA leave retroactive to February 17,

---

[3] Def.'s Br. in Supp. Mot. Summ. J. 4, ECF No. 45; *see also* Def.'s App. in Supp. Mot. Summ. J. Ex. D (Chambers-Hastings Decl.), App. 145, ECF No. 46.
[4] Def.'s Br. in Supp. Mot. Summ. J. 5, ECF No. 45.
[5] Pl.'s Compl. ¶ 4.15, ECF No. 1.
[6] *Id.*; Def.'s App. in Supp. Mot. Summ. J. Ex. A (Pl. Dep.) 239:1–7, App. 56, ECF No. 46.
[7] Pl.'s Compl. ¶ 4.16, ECF No. 1.
[8] *Id.*
[9] *Id.*
[10] Def.'s App. in Supp. Mot. Summ. J. Ex. D (Attachment 6), App. 172, ECF No. 46.
[11] Def.'s App. in Supp. Mot. Summ. J. Ex. A (Pl. Dep.) 238:13–16, App. 55, ECF No. 46.
[12] Def.'s App. in Supp. Mot. Summ. J. Ex. C (Gooding Decl.), App. 126, ECF No. 46.

2023, related to mental health, which Defendant approved.[13] Defendant "made no effort to restrict or interfere with Plaintiff's request for leave or her leave period in any way."[14]

According to Defendant, Plaintiff neither received inpatient care nor was incapacitated during her leave.[15] To be sure, Plaintiff continued her daily activities while on leave, such as driving, caring for herself, leaving her house, and going on walks.[16] Moreover, Plaintiff was able to perform her job duties in the time leading up to her leave. Plaintiff testified the following: "I was able to do my job. It wasn't stopping me. I mean, my mental health didn't stop me from doing the actual job."[17] Plaintiff further testified she would have taken time off from work even if Defendant denied her FMLA leave request.[18]

Plaintiff took the full period of leave she requested and returned to work on May 2, 2023, without restrictions.[19] That same day, Gooding and Defendant's Chief Human Resources Officer met with Plaintiff to inform her that Defendant was terminating her employment.[20] Defendant allowed Plaintiff to retire in June 2023, but Plaintiff requested to retire effective immediately.[21]

In March 2024, Plaintiff filed the instant action, alleging interference, discrimination, and retaliation under the FMLA.[22] Both Parties have since filed Motions for Summary Judgment, which are now ripe for this Court's review.[23]

---

[13] Def.'s App. in Supp. Mot. Summ. J. Ex. D (Chambers-Hastings Decl.), App. 147, ECF No. 46.
[14] Def.'s Br. in Supp. Mot. Summ. J. 8, ECF No. 45; *see also* Def.'s App. in Supp. Mot. Summ. J. Ex. C (Gooding Decl.), App. 126, ECF No. 46.
[15] Def.'s App. in Supp. Mot. Summ. J. Ex. A (Pl. Dep.) 253:9–12, 262:3–13, App. 59, 64, ECF No. 46.
[16] *Id.* at 263:24–25, 267:13–268:5, App. 65, 69–70.
[17] *Id.* at 263:15–17, App. 65.
[18] *Id.* at 264:15–19, App. 66.
[19] Def.'s App. in Supp. Mot. Summ. J. Ex. A (Return to Work Authorization), App. 105, ECF No. 46.
[20] Def.'s App. in Supp. Mot. Summ. J. Ex. C (Gooding Decl.), App. 127, ECF No. 46.
[21] Def.'s App. in Supp. Mot. Summ. J. Ex. D (Chambers-Hastings Decl.), App. 150–51, ECF No. 46.
[22] *See* Pl.'s Compl. ¶¶ 5.01–09, ECF No. 1.
[23] *See* Pl.'s Mot. Summ. J, ECF No. 26; Def.'s Mot. Summ. J., ECF No. 44.

## II. LEGAL STANDARD

Summary judgment is appropriate only where the pleadings and evidence show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Summary judgment is not "a disfavored procedural shortcut," but rather an "integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting FED. R. CIV. P. 1). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[T]he substantive law will identify which facts are material." *Id.* The movant must inform a court of the basis for its motion and identify the portions of the record that reveal there are no genuine disputes of material fact. *Celotex*, 477 U.S. at 323.

A court must view the evidence in the light most favorable to the nonmovant. *Ion v. Chevron USA, Inc.*, 731 F.3d 379, 389 (5th Cir. 2013). "Moreover, a court must draw all reasonable inferences in favor of the nonmoving party and may not make credibility determinations or weigh the evidence." *Id.* And if there appears to be some support for disputed allegations, such that "reasonable minds could differ as to the import of the evidence," a court must deny the motion for summary judgment. *Anderson*, 477 U.S. at 250.

"The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). If a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," the court must grant summary judgment. *Celotex*, 477 U.S. at 322. In that situation, no genuine dispute of material fact can exist, as the

failure to establish an essential element of the claim "necessarily renders all other facts immaterial." *Id.* at 323.

## III. ANALYSIS

Plaintiff moves for summary judgment on all her claims, namely, discrimination, interference, and retaliation under the FMLA.[24] Among other arguments, Defendant contends Plaintiff's FMLA claims fail as a matter of law because Plaintiff was not entitled to FMLA leave.[25] The Court agrees.

Plaintiff alleges she "suffered from one or more 'serious health conditions' as defined by the FMLA," which arose "out of Plaintiff's investigative work for Defendant."[26] "The FMLA grants 'an eligible employee' up to twelve weeks of annual unpaid leave for 'a serious health condition' that prevents him from performing the functions of his job." *Tatum v. S. Co. Servs., Inc.*, 930 F.3d 709, 713 (5th Cir. 2019) (quoting 29 U.S.C. § 2612(a)(1)(D)). The Fifth Circuit maintains that "[a] 'Serious Health Condition,' defined under the FMLA at 29 C.F.R. § 825.114(a), is an illness, injury, impairment or physical condition that involves 1) inpatient care or 2) continuing treatment by a health care provider." *Mauder v. Metro. Transit Auth. of Harris Cnty.*, 446 F.3d 574, 579 (5th Cir. 2006).

The term "inpatient care" refers to "an overnight stay in a hospital, hospice, or residential medical care facility, including any period of incapacity." 29 C.F.R. § 825.114. Further, a "serious health condition involving continuing treatment by a healthcare provider" encompasses "1) a period of incapacity of more than three consecutive days; 2) any period of incapacity due to

---

[24] Pl.'s Br. in Supp. Mot. Summ. J. 11, ECF No. 27.
[25] Def.'s Br. in Supp. Mot. Summ. J. 13–17, ECF No. 45.
[26] Pl.'s Br. in Supp. Mot. Summ. J. 10, ECF No. 27.

5

pregnancy or prenatal care; or 3) any period of incapacity or treatment for such incapacity due to a chronic serious health condition." *Mauder*, 446 F.3d at 580 (citing 29 C.F.R. § 825.114(a)(2)).

"The term incapacity means inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefore, or recovery therefrom." 29 C.F.R. § 825.113(b). Courts "focus[] on the ability to work in determining whether a person is incapacitated for the purposes of the FMLA." *Cole v. Sisters of Charity of the Incarnate Word*, 79 F. Supp. 2d 668, 672 (E.D. Tex. 1999); *see also Murray v. Red Kap Indus., Inc.*, 124 F.3d 695, 698 (5th Cir. 1997) ("[W]here an employee alleges that he has a serious health condition involving continuing treatment by a health care provider, he must first demonstrate a period of incapacity (i.e., *the inability to work*) for at least four consecutive days." (emphasis added)).

Here, the record indicates Plaintiff neither received inpatient care nor was incapacitated during the leave period in question. Plaintiff in her deposition explicitly denied receiving inpatient care. Indeed, when Plaintiff was asked whether she "receive[d] any inpatient care for [her] mental health issues during or after February 2023," Plaintiff responded "No."[27] Likewise, there is no indication Plaintiff was incapacitated during the leave period. In her deposition, Plaintiff responded "No," when asked whether she was "incapacitated in any way."[28] In fact, Plaintiff testified she was able to drive, care for herself, leave her house, go on walks, and maintain normal social behavior.[29]

Further, Plaintiff was able to perform her job duties despite her alleged mental health issues. According to Plaintiff, she "was able to do [her] job. It wasn't stopping [her] . . . [her] mental health didn't stop [her] from doing the actual job."[30] When asked in her deposition whether

---

[27] Def.'s App. in Supp. Mot. Summ. J. Ex. A (Pl. Dep.) 253:9–12, App. 59, ECF No. 46.
[28] *Id.* at 262:3–13, App. 64.
[29] *Id.* at 263:24–25, 267:13–268:5, App. 65, 69–70.
[30] *Id.* at 263:15–17, App. 65.

she "could have continued to perform the duties of [her] actual job but it was better for [her] to take time off for [her] mental health," Plaintiff responded "Yes."[31] Tellingly, Dr. Chism, confirmed Plaintiff's ability to work, stating "Ms. Holland never was not able to do her job."[32]

In sum, the record evidence is rife with admissions that negate the existence of a serious health condition under the FMLA. And Plaintiff proffers no evidence to the contrary. In response to Defendant's contention that she lacked a serious health condition entitling her to FMLA leave, Plaintiff merely directs the Court to a portion of Dr. Chism's deposition where he states that Plaintiff was "operating on fumes" and was "not healthy."[33] Plaintiff identifies no record evidence, though, that "operating on fumes" led to Plaintiff's inpatient care or any period of incapacity. Nor does Plaintiff identify caselaw demonstrating that "operating on fumes" amounts to a serious health condition triggering protection under the FMLA.

By Plaintiff's own admissions, she was able perform her job duties despite her mental health, and there is no evidence that her mental health caused her any period of incapacity. *See Cole*, 79 F. Supp. 2d at 672 ("Plaintiff was able to perform the functions of a respiratory therapist and there is no indication that her stress caused her any period of incapacity as it has been defined-even on the day before her termination."). Indeed, "[w]hile it is true that [Plaintiff] fell ill and had to leave work, this is not evidence of the *inability* to work as required by the FMLA." *Id.* (emphasis added). Thus, Plaintiff "does not meet the requirements for having a serious health condition and is not eligible for FMLA leave" as a matter of law. *Id.* Consequently, Defendant cannot be liable for Plaintiff's discrimination, interference, and retaliation claims under the FMLA.

---

[31] *Id.* at 263:18–22, App. 65.
[32] Def.'s App. in Supp. Mot. Summ. J. Ex. B (Chism Dep.) 279:13–14, App. 117, ECF No. 46.
[33] Pl.'s Resp. in Opp'n to Def.'s Mot. Summ. J. 9–10, ECF No. 52; Def.'s App. in Supp. Mot. Summ. J. Ex. B (Chism Dep.) 226:12–13, App. 114, ECF No. 46.

Moreover, Defendant contends that Plaintiff is not entitled to FMLA protection by virtue of equitable estoppel because Plaintiff did not detrimentally rely on Defendant's representations about her FMLA coverage.[34]  The Court agrees that the doctrine of equitable estoppel cannot salvage Plaintiff's claims.  The Fifth Circuit has explained:

> [A]n employer who without intent to deceive makes a definite but erroneous representation to his employee that she is an "eligible employee" and entitled to leave under FMLA, and has reason to believe that the employee will rely upon it, may be estopped to assert a defense of non-coverage, if the employee reasonably relies on that representation and takes action thereon to her detriment.

*Minard v. ITC Deltacom Commc'ns, Inc.*, 447 F.3d 352, 359 (5th Cir. 2006).

Here, Plaintiff did not rely on Defendant's representation to her detriment.  In fact, Plaintiff in her deposition explicitly disclaimed detrimental reliance.  Plaintiff explained she "had enough vacation and sick time" to take time off from work regardless of whether Defendant approved her leave.[35]  In other words, Plaintiff would have taken time "off work if [her] FMLA request had not been approved."[36]  Tellingly, Plaintiff proffers no evidence to the contrary.[37]  *See Durose v. Grand Casino of Miss. Inc.*, 251 F. App'x 886, 889 (5th Cir. 2007) ("[The] failure to establish harm is what differentiates [the plaintiff's] claim from the one considered by this court in [*Minard*]."). Because Plaintiff "has not presented any evidence that she detrimentally relied" on Defendant's representation regarding her entitlement to FMLA leave, her claims still fail as a matter of law. *Id.* at 890.

---

[34] Def.'s Br. in Supp. Mot. Summ. J. 16–17, ECF No. 45.
[35] Def.'s App. in Supp. Mot. Summ. J. Ex. A (Pl. Dep.) 264:20–23, App. 66, ECF No. 46.
[36] *Id.* at 264:15–19, App. 66.
[37] Pl.'s Resp. in Opp'n to Def.'s Mot. Summ. J. 10–11, ECF No. 52.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 44) is **GRANTED**. Plaintiff's claims are **DISMISSED with prejudice**.[38] Separate final judgment shall issue.

**SO ORDERED** on this **3rd day** of **April, 2025**.

_____
Reed O'Connor
**UNITED STATES DISTRICT JUDGE**

---

[38] Because the Court does not rely on any of the alleged improper evidence mentioned in Defendant's Motions to Strike (ECF Nos. 54, 57), the Court **DENIES as moot** the Motions to Strike.

9